No. 22-5638

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

_____

RICHARD DEVORE

*Plaintiff-Appellant*,

v.

UNITED PARCEL SERVICE CO.,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Western District of Kentucky, Louisville Division,
Case No. 3:19-cv-00731-CRS-RSE

_____

**REPLY BRIEF OF APPELLANT, RICHARD DEVORE**

_____

John S. Friend
Chris K. Stewart
Lauren E. Freeman
Bishop Friend, P.S.C.
6520 Glenridge Park Place
Suite 6
Louisville, KY 40222
(502) 625-2600
John@bishoplegal.net
Lauren@bishoplegal.net
Chris@bishoplegal.net
*Counsel for Plaintiff/Appellant*

1312197.9

# TABLE OF CONTENTS

TABLE OF CONTENTS.........................................................................i

TABLE OF AUTHORITIES ............................................................ ii

INTRODUCTION ............................................................................1

    **1.**    Mr. DeVore's statement that he would need to be out for surgery during UPS' peak season was sufficient to put UPS on notice of the approximate timing and duration of his leave. .........................................................................2

    **2.**    Mr. DeVore was not required to provide the exact timing or duration of his medical leave because those particular facts were unforeseeable when he provided notice.........4

    **3.**    The temporal proximity between Mr. DeVore's protected activity under the FMLA and his termination, considered with the record evidence that he was treated differently from other employees, create fact questions as to pretext and causation. ................................................................7

    **4.**    UPS cannot use the honest belief rule as a "get-out-of-pretext-free card" ...........................................................9

CONCLUSION .................................................................................11

CERTIFICATE OF COMPLIANCE
CERTIFICATE OF SERVICE

# TABLE OF CITATIONS

**Page**

## CASES

*Bryson v. Regis Corp*., 498 F.3d 561 (6th Cir. 2007) ................................ 7

*Cantrell v. Nissan N. Am. Inc.,* 145 F. App'x 99 (6th Cir. 2005) ........................... 9

*Craddock v. FedEx Corp. Servs.*, 2022 U.S. App. LEXIS 3632, No. 20-5655 (6th Cir., Feb. 9, 2022). ......................................................................... 11

*Dixon v. Gonzales*, 481 F.3d 324 (6th Cir. 2007). ................................................ 7

*Edgar v. JAC Prods., Inc*., 443 F.3d 501 (6th Cir. 2006). ..................................... 4

*Marshall v. Rawlings Co. LLC*, 854 F.3d 368 (6th Cir. 2017). ............................... 4

*Philbrick v. Holder,* 583 F. App'x 478 (6th Cir. 2014) .......................................... 9

*Render v. FCA US, LLC,* ___ F.4th ___, No. 21-2851 (6th Cir., Nov. 16, 2022). ......................................................................... 5

*Valdivia v. Twp. High Sch. Dist. 214,* 942 F.3d 395 (7th Cir. 2019). .................. 3-4

*Wallace v. FedEx Corp*., 764 F.3d 571 (6th Cir. 2014) ........................................ 3

*Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400 (6th Cir. 2021). ............................... 10

## REGULATIONS

29 C.F.R. § 825.301(b). ....................................................................................... 5

29 C.F.R. § 825.302(c)..................................................................................... 2, 6

29 C.F.R. § 825.303(b). .................................................................................. 2-3

## INTRODUCTION

This is an FMLA retaliation case. The Plaintiff/Appellant, Richard DeVore ("Mr. DeVore"), worked for UPS for nearly three decades. In 2018, Mr. DeVore learned that he would need to be out on leave for surgery later in the year. While Mr. DeVore did not yet know the exact timing of his leave, because the surgery had not yet been scheduled, he nonetheless alerted his supervisor that he would need to be out later that year. Shortly thereafter, Mr. DeVore made a low-impact mistake in his job. UPS terminated Mr. DeVore, claiming it was because of that mistake. The evidence shows that UPS has not identified a single person terminated for making the same or a remotely similar mistake. In stark contrast Mr. DeVore has shown a great deal of evidence indicating that UPS essentially never terminated employees for such mistakes.

This casts serious doubt on UPS's justification, while substantially supporting Mr. DeVore's assertion that he was really terminated because his then supervisor did not wish to be inconvenienced by Mr. DeVore's medical leave. Mr. DeVore presented more than enough evidence to allow a jury to find in Mr. DeVore's favor, and the court below erred in granting the Defendant's motion for summary judgment.

The principal issues before the Court are (1) whether Mr. DeVore engaged in a protected activity that put UPS on notice that he would need to take FMLA leave;

(2) whether showing temporal proximity, evidence of a pretextual termination, and a history of animus toward an employee is sufficient to create a jury question as to causation; and (3) whether, if the other elements of a *prima facie* case are met, the "honest belief" rule nonetheless shields UPS from any liability. Defendant's Response Brief [Doc. 21-1] is unconvincing on these determinative issues. For the reasons that follow, and for the reasons set forth in Mr. DeVore's principal brief, the district court must be reversed and this case remanded for further proceedings.

### 1. Mr. DeVore's statement that he would need to be out for surgery during UPS' peak season was sufficient to put UPS on notice of the approximate timing and duration of his leave.

The regulation cited by UPS, 29 C.F.R. § 825.302(c), requires that an employee provide the "anticipated timing and duration of the leave."[1] UPS concedes that Mr. DeVore told his supervisor, Jeff Johnston, that he would need to go out for surgery and that Mr. DeVore did so "in case it would coincide with the UPS Peak Season (in November and December) for which he typically trained new hires." [UPS Resp. Br., Doc. 21-1 at 4]. UPS' peak season is a time period known by UPS and Messrs. Johnston and DeVore, and UPS does not contest that its peak season is in November and December. [*Id.*]. UPS' attempt to employ what amounts to a

---

[1] For reasons explained *infra*, recent precedent from this Court clarifies that, in fact, Mr. DeVore's yet unscheduled surgery fell under the classification of unforeseeable leave and was therefore governed by 29 C.F.R. § 825.303(b). Nonetheless, even under § 825.302, Mr. DeVore put UPS on notice of his need for medical leave.

"magic-words" test should not distract this Court from what matters. Mr. DeVore's supervisor would have been well aware of what it meant when Mr. DeVore said he would be out during peak season for a surgery on his foot. [R. 62-1 at PageID # 406].

Moreover, UPS' argument that Mr. DeVore said only that he would need to be "out" is incorrect. Mr. DeVore has further testified that, in general, when he needed leave, "I just simply let my supervisor or manager know that, 'Hey, I'm going to have to, you know, go out on disability,' and they would take care of it." [R. 62-1 at PageID # 405]. On top of that, UPS, acting in good faith, would have fairly understood that someone who had taken a significant amount of FMLA leave for a foot surgery in the past, and who was now giving several months' advance notice of an upcoming need to be out for another foot surgery, was referring to a need for medical leave, not merely a need for an afternoon off. To the extent UPS had any question about this, the regulations provide that it is UPS' duty to inquire further. 29 C.F.R. § 825.303(b).

For this reason, the Sixth Circuit's determination that FMLA protections go into effect when an employee notifies his or her employer that "leave is needed" controls here. *Wallace v. FedEx Corp.*, 764 F.3d 571, 586 (6th Cir. 2014). At a minimum, the issue should be treated as a question of fact for a jury. *Valdivia v. Twp. High Sch. Dist. 214*, 942 F.3d 395, 400 (7th Cir. 2019). "Adequacy of notice is a fact-rich question that is perhaps best resolved by the trier of fact, particularly,

3

where, as is the case here, the employer and employee dispute the quantity and nature of communications regarding the employee's illness." *Id.* (internal quotations and citation omitted).

### 2. Mr. DeVore was not required to provide the exact timing or duration of his medical leave in any case, because those particular facts were unforeseeable at the time he engaged in protected activity.

The Parties agree that claims of FMLA retaliation are governed by the *McDonnell-Douglas* burden shifting framework. *Marshall v. Rawlings Co. LLC*, 854 F.3d 368, 379 (6th Cir. 2017); [Resp. Br., Doc. 21-1 at 16]. Under that framework, to make a *prima facie* showing of FMLA retaliation, a Plaintiff must show that he or she engaged in protected activity by providing her or his employer notice of his or her need to take FMLA leave; that she or he suffered an adverse employment action; and that the previous two elements are causally connected. *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006).

UPS' response [Doc. 21 at 15] argues that Mr. DeVore failed to provide UPS notice of his need to take FMLA leave, because Mr. DeVore did not state the timing of the leave or the duration. The problem with UPS' argument, on top of the fact that Mr. DeVore did provide UPS with sufficient notice of the timing and duration of the needed leave, is that UPS' focus here is on the wrong regulation. Mr. DeVore was not required to state the precise timing or duration of the needed FMLA leave. Sixth Circuit authority, published after Mr. DeVore filed his appellate brief in chief herein,

offers further clarity on the issue. Three regulations are involved in this analysis. First, the most general provision, 29 C.F.R. § 825.301(b) "gives general instructions to all employees who want to designate leave as FMLA leave." *Render v. FCA US, LLC*, ___ F.4th ___, No. 21-2851 (6th Cir., Nov. 16, 2022).

Section 825.301(b) states that "[a]n employee giving notice of the need for FMLA leave does not need to expressly assert rights under the Act or even mention the FMLA to meet his or her obligation to provide notice, though the employee would need to state a qualifying reason for the needed leave and otherwise satisfy the notice requirements set forth in § 825.302 or § 825.303 depending on whether the need for leave is foreseeable or unforeseeable." "Employees must therefore comply with this broader provision and one of the two specific provisions that give detailed instructions to employees depending on whether the need for leave was foreseeable or unforeseeable." *Render*, *supra* at \*10.

Thus, the next question is whether the leave requested was foreseeable or unforeseeable. *Id.* According to 29 C.F.R. § 825.303, "[w]hen the approximate timing of the need for leave is not foreseeable, an employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case." Subsection (b) sets forth what this notice requires: "An employee shall provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request."

By contrast, 29 C.F.R. § 825.302(c) sets forth what is required to establish notice where the timing and duration of the leave is foreseeable. "An employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave." 29 C.F.R. § 825.302(c). In other words, the foreseeable leave section adds the requirement that an employee give his employer notice of the timing and duration of the needed leave, and UPS incorrectly focused on that section.

Here, Mr. DeVore's surgery was, at the time he gave notice to his supervisor, unscheduled, and the precise time he would need to be out was unknown. At this point Mr. DeVore could only have a general idea that the surgery needed to occur, that he would need leave for the surgery, and that the surgery would need to be scheduled during UPS' peak season. Mr. DeVore therefore notified his supervisor as soon as was practicable so that UPS could plan accordingly. This is sufficient notice under § 825.302, but, to the extent this Court were to harbor any doubt in that regard, the plain language of the relevant regulation would lead one to conclude that the exact timing and duration of Mr. DeVore's leave remained unforeseeable until the leave was actually scheduled with Mr. DeVore's surgeon. As a result, Mr. DeVore's need for leave fairly falls under § 825.303, which does not contain the notice requirements expressed in § 825.302.

**3. The temporal proximity between Mr. DeVore's protected activity under the FMLA and his termination, considered with the record evidence that he was treated differently from other employees, create fact questions as to pretext and causation.**

UPS claims Mr. DeVore cannot make a *prima facie* showing of causation connecting the protected activity under the FMLA with Mr. DeVore's termination. UPS is wrong. "The burden of proof at the *prima facie* stage is minimal." *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007). In *Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007), this Circuit held that a three-month time lapse between the plaintiff's request for FMLA leave and her termination on the day she was scheduled to return to work was sufficient to establish a *prima facie* showing of causation.

Here, Mr. DeVore was terminated less than three and possibly less than two months after notifying UPS of his upcoming need to take FMLA leave.[2] And while timing alone can sometimes meet the minimal burden required at the *prima facie* phase, Mr. DeVore provided ample other evidence to support the causation element. UPS describes the evidence Mr. DeVore cites in his principal brief as "a litany of inapplicable statements without explaining how they support his allegation that his

---

[2] While UPS notes that Mr. DeVore does not know the exact date of his conversation with Mr. Johnston regarding his need for FMLA leave, Mr. DeVore knows it was in March, and he was terminated less than three months before the beginning, and less than two months after the end, of March, on May 25th. Therefore, the evidence establishes the termination was, at least, within the three-month window found to constitute suspicious timing in *Bryson*.

employment ended because he purportedly invoked his FMLA rights." [Doc. 21-1 at 19]. This may be an effective insult, but it is not an effective argument.

A reasonable juror could conclude that current and former UPS employees testifying as they did in sworn depositions that UPS never fired anyone for doing something like Mr. DeVore did — and that such mistakes were *extremely common* — is in fact evidence that UPS fired Mr. DeVore because he engaged in protected activity. The same is true for the fact that this was the first time Mr. DeVore had requested leave under Mr. Johnston's supervision, but that Mr. DeVore had twice taken FMLA before being supervised by Mr. Johnston, without incident. What is more, the sworn affidavit of a former employee claiming that UPS retaliates against employees who need to take medical leave, and the deposition testimony of multiple employees confirming that mistakes of the type Mr. DeVore made are commonplace, would permit a reasonable juror to conclude that UPS terminated Mr. DeVore because he notified Mr. Johnston of an upcoming need for medical leave. [Brief of the Appellant, Doc. 18 at 23-24].

UPS claims that the fact that another supervisor first discovered Mr. DeVore's mistake works against Mr. DeVore's case for causation. Not so. Viewing this evidence in the light most favorable to Mr. Devore, it is easy to see this fact as simply providing Mr. Johnston with the opportunity to do what he already wanted to do,

terminate Mr. DeVore because Mr. DeVore's need to take FMLA leave would inconvenience Mr. Johnston and UPS.

The cumulative evidence Mr. DeVore offers alongside temporal proximity serves both as sufficient evidence of a causal link and of pretext. This Circuit has recognized that evidence of pretext may serve to buttress a causal connection alongside temporal proximity. *Philbrick v. Holder*, 583 F. App'x 478, 490 (6th Cir. 2014). In that case, the court described the "'overlap between the causal connection requirement and a showing that the proffered reason for termination was not the actual reason,'" and recognized this Circuit's previous holding that "in retaliation cases, the same type of evidence may be used to prove both." (*Id.* (quoting *Cantrell v. Nissan N. Am. Inc.*, 145 F. App'x 99, 107 n.2 (6th Cir. 2005)).

Mr. DeVore has presented more than enough evidence to establish a causal connection at the *prima facie* stage, and the District Court erred in granting UPS summary judgment on this element. UPS arguments to the contrary do nothing more than either distract or present evidence in a light most favorable to UPS, and are without persuasive merit under the determinative standards for summary judgment here.

4. **UPS cannot use the honest belief rule as a "get-out-of-pretext-free card."**

Mr. DeVore and UPS agree that Mr. DeVore in fact failed to enter a release code with respect to Pilot Leuenberger on May 19, 2018, resulting in a cost to UPS

of less than a hundred dollars. Mr. DeVore further agrees with UPS that, at the time, Mr. DeVore did not have the authority to exercise discretion in the entering of this code. Mr. DeVore mistakenly thought at the time and under the pressurized flight scheduling context he was working under that he did. [R. 62-1 at PageID # 424]. But UPS is essentially asking this Court to play the role of a jury by concluding that UPS was justified in its proffered reasons for terminating Mr. DeVore.

The problem with this request by UPS is that the so-called "honest belief" rule does not extend so far as to permit companies to baldly state that they believed they had good reasons for terminating an employee and, in so doing, overcome a civil rights plaintiff's claim that those reasons were pretextual. UPS fails to acknowledge the most recent cases from the Sixth Circuit addressing the "honest belief" rule. In *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 425 (6th Cir. 2021), this Court held that the "honest belief" rule in no way prevents a plaintiff from showing that a defendant's proffered reason for terminating an employee did not "actually motivate" the termination.

Here, Mr. DeVore has offered evidence from numerous employees, current and past, who all stated that they knew of no one who had ever been terminated for a similar mistake to the one Mr. DeVore made, showing that UPS proffered reason for terminating him did not actually motivate the termination. This is sufficient to permit a jury to conclude UPS' proffered reason for termination was pretextual, and

UPS should not be permitted to rely on the "honest belief" rule to gainsay Mr. DeVore's claim of pretext. That is a question for the jury, not an issue for the judge. *See also Craddock v. FedEx Corp. Servs.*, 2022 U.S. App. LEXIS 3632, No. 20-5655 (6th Cir., Feb. 9, 2022).

## CONCLUSION

UPS fired Mr. DeVore because he engaged in protected activity under the FMLA. Mr. DeVore more than met the minimal circumstantial burden required under *McDonnell-Douglas*, and the District Court erred in its application of the law and in its misconstruction of the facts. Mr. DeVore therefore respectfully requests this Court to reverse the District Court's decision and remand this case for further proceedings.

*/s/ Chris K. Stewart*
John S. Friend
Chris K. Stewart
Lauren E. Freeman
Bishop Friend, P.S.C.
6520 Glenridge Park Place
Suite 6
Louisville, KY 40222
(502) 625-2600
John@bishoplegal.net
Lauren@bishoplegal.net
Chris@bishoplegal.net
Counsel for Plaintiff/Appellant

## **<u>CERTIFICATE OF COMPLIANCE</u>**

I certify that I am a member of the Bar of the United States Court of Appeals for the Sixth Circuit.

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i), because it contains less than 6,500 words, as determined by Microsoft Word (2018), including the headings and footnotes and excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).  The brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6).  The text appears in 14-point Times New Roman, a proportionally spaced typeface.

/s/ Chris K. Stewart
Chris K. Stewart

## <u>CERTIFICATE OF SERVICE</u>

On December 2, 2022, I electronically filed this Appellee's Brief with the

Clerk of the Court using the CM/ECF system and the Brief was served via the

CM/ECF system upon counsel of record for the Appellant.


_/s/ *Chris K. Stewart*_____